IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**OLIVER W. HART**                                                                 **PETITIONER**

v.                              NO. 4:21-cv-00061 LPR-PSH

**DEXTER PAYNE**                                                                   **RESPONDENT**

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

I. BACKGROUND. The record reflects that in April of 2009, petitioner Oliver W. Hart ("Hart") pleaded guilty in Miller County, Arkansas, Circuit Court cases CR-2002-162-3 ("162"), CR-2002-570-1 ("570"), and CR-2003-627-1 ("627"). See Docket Entry 1 at CM/ECF 17. He was sentenced to ten years' probation. See Id.

Sometime later in 2009, Hart was sentenced in a Texas state trial court to a term of imprisonment for an unidentified offense. See Docket Entry 4, Exhibit G at CM/ECF 7. He was incarcerated in Texas, where he remained until he was paroled in November of 2013. See Id. See also Docket Entry 4, Exhibit D at CM/ECF 146.

Upon being paroled by Texas authorities, Hart reported to his "supervising Arkansas probation officer." See Docket Entry 4, Exhibit G at CM/ECF 7. In December of 2013, Hart asked that "supervision of his probation be transferred to Texas, which was done." See Hart v. State, 2017 Ark.App. 434, 530 S.W.3d 366, 367 (2017). The supervision of his probation was transferred to Texas authorities pursuant to the Interstate Compact for Adult Offender Supervision ("Compact"). See Docket Entry 4, Exhibit G at CM/ECF 7.

In August of 2014, Hart was arrested in Texarkana, Texas, see Hart v. State, 530 S.W.3d 366, and "[h]is Texas supervisor informed [his] Arkansas probation officer of the arrest," see Hart v. State, 2020 Ark. App. 31, 6, 2020 WL 356950 (2020). Hart was detained by Texas authorities until September of 2014, when he was released on bond. See Docket Entry 4, Exhibit G at CM/ECF 17. See also Docket Entry 4, Exhibit D at CM/ECF 146.

Arkansas authorities thereafter filed petitions to revoke Hart's probation in 162, 570, and 627. See Docket Entry 4, Exhibit B at CM/ECF 18-19, 125-126, 235-236. The Miller County, Arkansas, Circuit Court issued warrants in 162 and 570 on September 29, 2014, and a warrant in 627 on October 9, 2014. See Id.

On December 19, 2014, Hart was stopped for traffic violations in Texarkana, Arkansas. See Docket Entry 4, Exhibit G at CM/ECF 18. When it was discovered that he had outstanding warrants from Miller County, Arkansas, Circuit Court, he was arrested and detained by Arkansas authorities. See Id. See also Hart v. State, 2020 Ark. App. 31, 6 (2020).[1]

---

[1] In denying Hart's petition for post-conviction relief, the Miller County, Arkansas, Circuit Court observed that Arkansas authorities gained custody of him in the latter part of 2014 when "Texas allowed his waiver of extradition to Arkansas and his custody was returned to Arkansas for disposition of the pending revocation warrants." See Docket Entry 1 at CM/ECF 29. It is now clear that the statement is a "misstatement of the procedural facts," see Docket Entry 10 at CM/ECF 3, and Arkansas authorities gained custody of him when he was arrested following a traffic stop in Texarkana, Arkansas, on December 19, 2014.

3

On June 14, 2016, following several delays, a probation revocation hearing was held in Miller County, Arkansas, Circuit Court. See Docket Entry 4, Exhibit B at CM/ECF 338-456. Hart was found to have violated the terms of his probation, and he was sentenced to a term of imprisonment. See Hart v. Potter Black, 2017 WL 68632 (2017).

Hart appealed the revocation of his probation. See Hart v. State, 530 S.W.3d 366. The Arkansas Court of Appeals found no reversible error and affirmed the revocation of his probation. See Id.

On October 17, 2017, Hart filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 in Miller County, Arkansas, Circuit Court, which he later amended. See Docket Entry 4, Exhibit C at CM/ECF 45-52, 53-58. In the petitions, he maintained that his probation was revoked in violation of his constitutional rights, specifically, his Sixth Amendment right to the effective assistance of counsel. The state trial court denied the petition, see Docket Entry 1 at CM/ECF 17-38, and Hart appealed. The state Court of Appeals found no reversible error and affirmed the denial of his petition. See Hart v. State, 2020 WL 356950.

II. PLEADINGS. Hart began the case at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. In the petition, he challenged the revocation of his probation on the following grounds:

>    1) the Arkansas courts' holdings that trial counsel was not ineffective was an unreasonable application of, and contrary to, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), regarding all grounds of ineffective assistance of counsel raised in his Rule 37 petition; and
>
>    2) the Arkansas courts disregarded the Compact, resulting in a violation of his rights to due process and equal protection.

<u>See</u> Docket Entry 1 at CM/ECF 2, 7-13. Hart asked that his "probation revocation and sentence" be vacated. <u>See</u> Docket Entry 1 at CM/ECF 14.

Respondent Dexter Payne ("Payne") filed a response to the petition and asked that the petition be dismissed. He so maintained for the following reasons:

> … [Hart's] initial claim, the issue of ineffective assistance, was adjudicated on the merits in state court; [he] has entirely failed to demonstrate the state decision was contrary to, or entailed an unreasonable application of, clearly established law, and, moreover, Hart's claim of ineffective assistance fails to surpass the "doubly deferential" standard of collateral review imposed on such claims. The other claim raised in the petition, [his] due process claim premised on alleged violations of interstate-compact rules, is not cognizable and, in any event, is without merit. In the alternative, both claims are barred from habeas review because they are procedurally defaulted. …

<u>See</u> Docket Entry 4 at CM/ECF 8.

Hart thereafter filed a reply. In it, he identified what is likely the crux of this case, that being the following:

> ... After [the Miller County, Arkansas, Circuit Court] issued the warrants, the Arkansas probation authorities should have notified [Texas authorities] that Arkansas wanted to arrest ... Hart and return him to Arkansas for his revocation. Arkansas did not do that. If Arkansas had notified the probation authorities in Texas, ... Hart would have received a probable cause hearing[.] ... Hart would have presented evidence that there was not probable cause for him to be retaken to Arkansas. Instead, warrants were issued, and authorities in Arkansas waited a lengthy time before snaring ... Hart at an ATM machine in Texarkana, Arkansas. This resulted in obvious prejudice to [him] ... and his attorneys in Arkansas failed to provide effective assistance of counsel as set forth in Strickland v. Washington ... by not sufficiently arguing this and other [Compact] violations in this case.

See Docket Entry 7 at CM/ECF 2.[2]

III. ANALYSIS. The second of Hart's two claims is clear; he maintains that the Arkansas courts circumvented the provisions of the Compact, thereby violating his rights to due process and equal protection. His first claim, though, is not so clear. Payne understands Hart's first claim to be as follows:

---

[2] After the undersigned began reviewing the record, it became apparent that additional briefing on the following two issues would be beneficial: first, how Arkansas authorities gained custody of Hart in the latter part of 2014; and second, whether other courts have encountered the same, or substantially similar, set of facts as presented here. The parties have now filed supplement briefs addressing those issues.

> Although the heading of Hart's first ground in his counseled petition asserts that the state-court decision on his ineffective-assistance claims was contrary to or unreasonable under <u>Strickland</u>, his pleading addresses only the ineffective-assistance claim that he argued in his appeal of the state postconviction proceeding, regarding his counsels' "refusal to raise [Compact] issues." [Footnote omitted] (ECF 1 at 2, 9.) He refers to purportedly "mandatory provisions of the [Compact]" related to his arrest "without no preliminary hearing." <u>Id</u>. at 9.

<u>See</u> Docket Entry 4 at CM/ECF 13-14. Because "the only specific ineffective-assistance claim raised by Hart's petition asserts counsels' failure to address purported [Compact] violations," <u>see</u> <u>Id</u>. at 14, n.6, Payne only addressed that claim. Payne's construction of the claim is adopted, and it is construed as a challenge to counsels' failure to raise purported Compact violations in the probation revocation proceeding.

There are several issues in this case, <u>e.g</u>., procedural bar, reasonable adjudication, viable claim in federal habeas corpus. Those issues, though important, need not be addressed. Given the facts of this case, and for the reasons that follow, Hart was not entitled to rights under the Compact, and his attorneys cannot be faulted for failing to raise purported Compact violations in the probation revocation proceeding.[3]

---

[3]    <u>See</u> <u>Barrett v. Acevedo</u>, 169 F.3d 1155 (8th Cir. 1999) (judicial economy sometimes dictates reaching merits of case if they are easily resolved). As the Court of Appeals observed in <u>Chambers v. Bowersox</u>, 157 F.3d 560, 564 n.4 (8th Cir. 1998), "the simplest way to decide a case is often the best."

Under the Compact, "states may transfer offenders to other states, providing offenders the opportunity to transfer their parole supervision to the community where they have family, confirmed employment, specialized treatment programs, and/or educational or vocational opportunities." See Penland v. Adger, 2017 WL 2628008, 4 (D.S.C. 2017), report and recommendation adopted, 2017 WL 2618843 (D.S.C. 2017).[4] The Compact is regulated by a commission that has promulgated a set of rules. See http://www.interstatecompact.org. Chapter Five of the Rules governs the retaking of an offender, which means "the act of a sending state in physically removing an offender, or causing to have an offender removed, from a receiving state." See Rule 1.101.[5] A sending state may order the return of an offender, see Rule 5.101(a), and may do so by warrant, see Rule 5.101(b). If by warrant, a sending state must notify a receiving state, enabling a receiving state to assist in apprehending the offender. Rule 5.101-1 envisions a situation in which an offender is charged with a subsequent criminal offense in a receiving state and provides the following:

---

[4] Arkansas is a Compact state. See Ark. Code Ann. 12-51-101 through 12-51-901.

[5] "Sending state means a state requesting the transfer of an offender, or which transfers supervision of an offender, under the terms of the Compact and its rules." See Rule 1.101. "Receiving state means a state to which an offender requests transfer of supervision or is transferred." See Id.

> Notwithstanding any other rule, if an offender is charged with a subsequent felony or violent crime, the offender shall not be retaken or ordered to return until criminal charges have been dismissed, sentence has been satisfied, or the offender has been released to supervision for the subsequent offense, unless the sending and receiving states mutually agree to the retaking or return.

If a sending state issues a warrant for an offender and requests the assistance of a receiving state in apprehending the offender, certain due process rights arise. See Rule 5.108. For instance, Rule 5.108(a) provides, in full, that "[a]n offender subject to retaking that may result in a revocation shall be afforded the opportunity for a probable cause hearing before a neutral and detached hearing officer in or reasonably near the place where the alleged violation occurred."

Here, a retaking as defined by Rule 1.101 never occurred, and the rights of Rule 5.108 never arose, because Arkansas authorities did not physically remove Hart, or cause him to be removed, from Texas. Instead, he voluntarily placed himself in Arkansas by travelling to Texarkana, Arkansas, on December 19, 2014. He happened to be stopped for traffic violations, at which time it was discovered that he had outstanding warrants from Miller County, Arkansas, Circuit Court. He was then arrested and detained by Arkansas authorities.

9

Hart characterizes his December 19, 2014, arrest as a "kidnapping," see Docket Entry 1 at CM/ECF 12; or Arkansas authorities "lying in wait for [him]," see Docket Entry 9 at CM/ECF 3. There is nothing to support the characterizations of his arrest as he voluntarily placed himself in Arkansas. It would have been nonsensical for Arkansas authorities, after having arrested him, to have returned him to Texas for a probable cause hearing to determine whether he should be sent back to Arkansas to appear in the probation revocation proceeding.

Hart appears to fault Arkansas authorities for failing to notify Texas authorities about the outstanding warrants. As the Miller County, Arkansas, Circuit Court observed, though, "[t]here is no requirement that any warrant issued by a magistrate be entered into [the National Crime Information Center database]." See Docket Entry 1 at CM/ECF 35. Moreover, the undersigned does not understand Rule 5.101(b) to require a sending state to notify a receiving state of outstanding warrants in every instance. A reasonable interpretation of the Rule is that a sending state is only required to notify a receiving state of outstanding warrants when the receiving state's assistance is required in apprehending the offender. Here, there is nothing to suggest that Arkansas authorities sought the assistance of Texas authorities in apprehending Hart.

Hart maintains that Arkansas authorities "waited a lengthy time before snaring [him] at an ATM machine in Texarkana, Arkansas." See Docket Entry 7 at CM/ECF 2. The record reflects that the warrants in 162 and 570 were issued on September 29, 2014, and the warrant in 627 was issued on October 9, 2014. He was arrested in Texarkana, Arkansas, on December 19, 2014. The undersigned is not persuaded that the approximately eleven week period between September 29, 2014, and December 19, 2014, or the approximately ten week period between October 9, 2014, and December 19, 2014, is a "lengthy time."

Hart also relies upon Rule 5.101-1. He maintains that the Texas charge resulting in his August of 2014 arrest in Texarkana, Texas, has not yet been resolved, and the unresolved charge prevented Arkansas authorities from retaking or ordering his return. The Rule, though, is inapplicable in this instance. Arkansas authorities did not retake or order his return pursuant to the Compact. They instead arrested and detained him after he voluntarily placed himself in Arkansas. Under his interpretation of the Rule, he could not be arrested and detained in Arkansas unless and until the Texas charge were resolved or Arkansas and Texas authorities mutually agreed to his retaking or return. The undersigned is not prepared to embrace such an interpretation of the Rule.

Hart objects to the sentence he received following the revocation of his probation, noting that the reasons for revoking his probation were minor. That issue, though, is one for the state courts of Arkansas, not the federal courts on habeas corpus review.

IV. RECOMMENDATION. This case hinges on whether the terms of the Compact were violated when Hart was arrested and detained by Arkansas authorities on December 19, 2014. A retaking as defined by Rule 1.101 never occurred, and the rights of Rule 5.108 never arose, because Arkansas authorities did not physically remove him, or cause him to be removed, from Texas. Thus, he was not entitled to rights under the Compact, and his attorneys cannot be faulted for failing to raise purported Compact violations in the probation revocation proceeding.

The undersigned therefore recommends that Hart's petition be dismissed, all requested relief be denied, and judgment be entered for Payne. A certificate of appealability should also be denied.

DATED this 28th day of May, 2021.

_____
UNITED STATES MAGISTRATE JUDGE